UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID M. PHILLIPS                                    CIVIL ACTION

VERSUS                                               NO. 21-844

DICOM TRANSPORTATION GROUP,                          SECTION M (5)
*et al.*

**<u>ORDER & REASONS</u>**

Before the Court is a motion for summary judgment filed by defendants L Brands Service

Company, LLC ("L Brands"), Shawn Tolbert ("Tolbert"), and Aidan Duffy ("Duffy")

(collectively, "Defendants").[1]  Plaintiff David M. Phillips ("Phillips") responds in opposition,[2] and

Defendants reply in further support of their motion.[3]  Having considered the parties' memoranda,

the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

**I.      BACKGROUND**

This case involves claims arising out of an alleged theft and subsequent prosecution.  In

2017, Phillips and his then-wife, Zipphora Hawkins, co-owned a transportation company that made

deliveries for Dicom Transportation Group ("Dicom"), a warehousing and delivery company

located in St. Rose, Louisiana.[4]  Dicom handled the delivery of L Brands, Inc.'s products in Baton

Rouge, Louisiana, including to the Mall of Louisiana.[5]  L Brands is the parent company of Bath

and Body Works ("BBW") and Victoria's Secret ("VS").[6]  L Brands's distribution center in Ohio

sent products to Dicom, and Dicom contracted with drivers, including Phillips, to deliver the

---

[1] R. Doc. 20.
[2] R. Doc. 42.
[3] R. Doc. 49.
[4] R. Doc. 1-1 at 3.
[5] *Id.*  L Brands Service Company, LLC is the logistics and distribution arm of L Brands, Inc.  For ease of reference, the Court will refer to both companies interchangeably as "L Brands."
[6] *Id.*

products.[7]  Phillips would leave his 26-foot box truck at Dicom's facility overnight to be loaded by Dicom's employees with the next-day's deliveries.[8]

L Brands had a system of tracking cartons of merchandise.[9]  Each carton was assigned a unique number and scanned as it left the Ohio distribution center.[10]  The cartons were scanned four more times: (1) when they arrived at Dicom's warehouse; (2) when they left Dicom's warehouse; (3) when they were put on a driver's truck; and (4) finally, when they were delivered by the driver to the store.[11]  The process accurately monitored for any duplicate cartons, which would then be labeled using the original identification number along with a suffix of "-1."[12]

At the beginning of the day, the delivery driver is given paperwork listing the identification number of each carton on the truck and its delivery location.[13]  He is also given a scanner loaded with a digital version of this information.[14]  When the driver arrives at a delivery stop, he scans the barcode on the store's backdoor and then brings the cartons inside, leaving the scanner inside the store if he needs to make more than one trip back to the truck.[15]  The driver then scans each carton marking them as delivered.[16]  At this point, the scanner will note any overages, underages, or duplicates, all of which drivers are required to report immediately.[17]  Store employees are not required to count the cartons upon delivery, but rather rely on the scanned total to determine that the store received the correct number of cartons.[18]

---

[7] R. Doc. 20-4 at 1.
[8] R. Doc. 1-1 at 3.
[9] R. Doc. 20-4 at 1-2.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

In the spring and summer of 2017, the BBW and VS stores in the Mall of Louisiana were experiencing significant "shrinkage," *i.e.,* loss of product.[19]   Tolbert, L Brands's logistics asset protection manager, received notices of specific items missing from the deliveries made to the VS store on March 2, March 9, April 21, and May 11.[20]   The scan records showed that all items were delivered and the shortages became apparent only after the delivery driver, Phillips, left.[21]   Around the same time, Tolbert learned that Duffy, L Brands's regional asset protection manager, saw VS products for sale on Facebook and Instagram Marketplace in the Baton Rouge area that appeared to be in the original, distribution center packaging, indicating that the items were likely stolen prior to unpacking at the store, and possibly during the warehousing or delivery process.[22]   Because all cartons were scanned as delivered to the store, Duffy suspected that Phillips may be involved in the apparent theft.[23]

As a result, Tolbert and Duffy conducted a driver observation of Phillips on June 26, 2017, to look for suspicious activity and audit the truck at the day's end.[24]   They observed Phillips spend an unusual amount of time in the trailer of his truck between deliveries, which they thought was a sign of potential fraud.[25]   Phillips completed his deliveries timely, with no reports of any overages, underages, or duplicates, including at the Mall of Louisiana.[26]   Tolbert and Duffy approached Phillips at his last stop at the Juban Crossing Mall in Livingston Parish, Louisiana, and explained that they were conducting an audit.[27]   They searched Phillips's truck and found six cartons that were scanned as having been delivered earlier in the day at the Mall of Louisiana's BBW and VS

---

[19] *Id.*; R. Doc. 20-5 at 1.
[20] R. Docs. 20-4 at 2.
[21] *Id.*
[22] R. Docs. 20-4 at 2-3; 20-5 at 1.
[23] R. Doc. 20-4 at 3.
[24] *Id.*; R. Doc. 20-5 at 1.
[25] R. Docs. 20-4 at 3; 20-5 at 1.
[26] R. Docs. 20-4 at 3; 20-5 at 2.
[27] R. Docs. 20-4 at 3; 20-5 at 2.

stores.[28]  Tolbert reviewed Phillips's paperwork and confirmed that there was no record in the

system of any duplicates that could explain the discrepancy, and Phillips had not reported any

discrepancies or noted any on his paperwork.[29]  Moreover, Tolbert observed discrepancies in the

scan times for these six cartons relative to those of other cartons in the same deliveries that fit a

pattern of fraud, *i.e.,* taking the scanner back to the truck to scan boxes and leaving them on the

truck instead of bringing them into the store.[30]  Further, the cartons had signs of tampering because

BBS and VS products had apparently been consolidated into larger cartons.[31]  Tolbert called Brad

Hambleton, a Dicom manager, to discuss the situation.[32]  Hambleton did not provide any viable

explanation.[33]

Thereafter, Tolbert and Duffy questioned Phillips inside the Juban Crossing Mall's BBW

store.[34]  Phillips stated that the cartons must have been misloaded on the truck.[35]  In light of all the

other evidence, Tolbert thought that Phillips was attempting to steal the six cartons.[36]  Tolbert and

Duffy, following L Brands's policy, reported their findings to Dicom and local law enforcement.[37]

When the officers from Livingston Parish Police Department ("LPPD") arrived, they concluded

that they did not have jurisdiction because the cartons at issue were intended for a store in another

parish.[38]   The LPPD officers contacted the East Baton Rouge Parish Police Department

("EBRPD"), but officers from the EBRPD never arrived at the scene.[39]  Phillips was released.[40]

---

[28] R. Docs. 20-4 at 3; 20-5 at 2.
[29] R. Doc. 20-4 at 3.
[30] *Id.* at 4.
[31] R. Docs. 20-4 at 3; 20-5 at 2.
[32] R. Doc. 20-4 at 4.
[33] *Id.*
[34] R. Docs. 20-4 at 4; 20-5 at 2.
[35] R. Docs. 20-4 at 4; 20-5 at 2.
[36] R. Docs. 20-4 at 4; 20-5 at 2.
[37] R. Docs. 20-4 at 4; 20-5 at 2.
[38] R. Docs. 20-4 at 4; 20-5 at 2.
[39] R. Docs. 20-4 at 4; 20-5 at 2.
[40] R. Docs. 20-4 at 4; 20-5 at 2.

Hambleton instructed Phillips to leave to cartons with Tolbert and Duffy, which he did and then left.[41]

The next day, Tolbert and Duffy informed Hambleton and David Pippen (another Dicom manager) of their findings and asked that Phillips be removed from the L Brands account.[42]  They also reported their findings to a detective from the EBRPD.[43]  Finally, they visited the BBW and VS stores in the Mall of Louisiana to return the missing cartons, account for the value of their contents, and retrain the store employees to take the scanner before the delivery driver returns to his truck.[44]  Also that day, Dicom suspended Phillips's delivery contract because he was under investigation for stealing.[45]  Dicom terminated Phillips's contract a week later.[46]

On July 5, 2017, a judge of the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, signed a warrant for Phillips's arrest on the charge of felony theft in violation of La. R.S. 14:67.[47]  On October 26, 2017, Phillips was pulled over by officers of the New Orleans Police Department ("NOPD") for a traffic violation.[48]  The NOPD officers discovered the warrant, arrested Phillips, and booked him into Orleans Parish Prison, where he remained for eight days.[49]  On November 1, 2017, Phillips was transferred to East Baton Rouge Parish Prison where he spent three more days before being released on bail.[50]  On April 23, 2018, the East Baton Rouge Parish District Attorney made a provisional determination not to file formal charges against Phillips.[51]

---

[41] R. Doc. 20-4 at 4.
[42] *Id.* at 5; R. Doc. 20-5 at 2.
[43] R. Docs. 20-4 at 5; 20-5 at 2.
[44] R. Docs. 20-4 at 5; 20-5 at 2.
[45] R. Doc. 1-1 at 5.
[46] *Id.*
[47] R. Doc. 20-8 at 45.
[48] R. Doc. 1-1 at 5.
[49] *Id.*
[50] *Id.*; R. Doc. 20-8 at 43.
[51] R. Doc. 20-8 at 48.

Thereafter, on June 8, 2018, Phillips filed this suit in Civil District Court, Parish of Orleans, State of Louisiana, against Dicom and Pippen (a Dicom manager) alleging claims of defamation, false arrest, malicious prosecution, and negligent and intentional infliction of emotional distress.[52] On January 23, 2019, Phillips filed his first amended petition in state court adding Ann Arbor Distribution Inc. and MMS Distributors, Inc. as defendants.[53]  On January 29, 2021, Phillips filed a second amended petition in state court adding L Brands, Tolbert, and Duffy as defendants.[54] Phillips alleged that Tolbert and Duffy are liable for defamation per se and malicious prosecution because they "repeatedly contacted police to file charges against [him] and to request prosecution of said charges."[55]  Phillips dismissed his claims against all defendants except L Brands, Tolbert, and Duffy, who then removed the action to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[56]

## II.     PENDING MOTION

Defendants move for summary judgment arguing that Phillips cannot prevail on his defamation claim because their reports to law enforcement officers and Dicom are subject to a conditional privilege as good faith reports of misconduct, or alternatively, because the statements were true and made without malice.[57]  Defendants also argue that Phillips cannot prevail on his malicious prosecution claim because they acted reasonably and without malice in reporting the apparent theft to the police.[58]  As to Phillips's false arrest claim, Defendants argue that they made their reports to police in good faith based on a reasonable interpretation of the available evidence, and alternatively, intervening and independent acts by law enforcement broke the causal chain

---

[52] R. Doc. 1-1 at 1-8.
[53] Id. at 18-22.
[54] Id. at 44-49.
[55] Id. at 46.
[56] R. Doc. 1 at 1-7.
[57] R. Doc. 20-2 at 17-22.
[58] Id. at 23-25.

between their report and Phillips's arrest.[59]   Further, Defendants argue that Phillips's claims for

negligent and intentional infliction of emotional distress fail because they acted reasonably, not

outrageously, and Phillips has no evidence to support severe emotional distress.[60]

In opposition, Phillips argues that Defendants acted in bad faith because their investigation

was inadequate in that they did not talk to the store employees, review surveillance footage, or

inspect the warehouse before contacting law enforcement.[61]   He also argues that duplicate labels

could explain why the cartons were left on his truck.[62]   Phillips contends that Defendants'

statements to law enforcement were not true and made with malice.[63]   According to Phillips,

Defendants continued to say that he was a thief even after the district attorney refused the charges

and they have harassed his family.[64]   Further, Phillips argues that Defendants are liable for

negligent and intentional infliction of emotional distress because they breached a duty of good

faith in reporting him to law enforcement and "blacklisted" Phillips from other companies by

labeling him as a thief.[65]   Phillips claims that he suffered severe distress because he lost his

business and his wife, and spent time in jail, all of which has caused him to have nightmares, anger,

and lasting humiliation.[66]

In their reply memorandum, Defendants argue that, although their investigation was not

inadequate, a failure to investigate does not abrogate good faith.[67]   Defendants contend that they

had ample evidence that Phillips was attempting to steal the cartons and made reports to law

---

[59] *Id.* at 25-27.
[60] *Id.* at 27-31.
[61] R. Doc. 42 at 1-7.
[62] *Id.*
[63] *Id.* at 9-25.
[64] *Id.* at 12, 15-16.
[65] *Id.* at 19-23.
[66] *Id.* at 23-24.
[67] R. Doc. 49 at 3-4.

enforcement in good faith and without malice.[68]  Defendants also argue that they did not investigate

Philips's family and did not make any statements about him to anyone after June 27, 2017, much

less after the district attorney refused the charges.[69]  Defendants also reiterate that Phillips cannot

maintain claims for false arrest or malicious prosecution because there were intervening actions

by law enforcement leading to his arrest.[70]  Finally, Defendants argue that the facts Phillips claims

support his emotional distress claims are attributable to Dicom and Pippen, not them.[71]

## III.    LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Id*.  A party moving

for summary judgment bears the initial burden of demonstrating the basis for summary judgment

and identifying those portions of the record, discovery, and any affidavits supporting the

conclusion that there is no genuine issue of material fact. *Id*. at 323.  If the moving party meets

that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate

the existence of a genuine issue of material fact. *Id*. at 324.

---

[68] *Id.* at 3-6.
[69] *Id.* at 6-7, 9-10.
[70] *Id.* at 10.
[71] *Id.*

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

### B.  Defamation Per Se

The tort of "[d]efamation involves the invasion of a person's interest in his or her reputation and good name." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715 (La. 1999).  A defamation claims has four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Johnson v. Pupera*, 320 So. 3d 374, 386-87 (La. 2021).  The Louisiana supreme court has explained that "the fault requirement is generally referred to in the jurisprudence as malice, actual or implied." *Id.* at 387.  "[I]n order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Id.* (quotation omitted).  "If even one of the required elements of the tort is lacking, the cause of action fails." *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004).

Defamatory words are defined as "words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Id.*  Words that convey "an element of personal disgrace, dishonesty, or disrepute are defamatory." *Id.*  Moreover, "[w]ords which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic

facts or surrounding circumstances, are considered defamatory per se." *Id.* If a plaintiff proves

publication of words that are defamatory per se, "the elements of falsity and malice (of fault) are

presumed, but may be rebutted by the defendant." *Id.* The element of injury may also be

presumed. *Id.*

Good faith reports to law enforcement of potential criminal activity are conditionally

privileged from claims for defamation per se. *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d

669, 683 (La. 2006). "[T]he elements of the conditional privilege have been described as good

faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion,

and publication in the proper manner and to proper parties only." *Id.* (quotation omitted). The

good faith conditional privilege "arises from the social necessity of permitting full and unrestricted

communication concerning a matter in which the parties have an interest or duty, without inhibiting

free communication in such instances by the fear that the communicating party will be held liable

in damages if the good faith communication later turns out to be inaccurate." *Id.* at 681-82

(quotation omitted). The privilege extends to good faith reports of suspected wrongdoing or

misconduct within business relationships. *See, e.g., Maggio v. Liztech Jewelry,* 912 F. Supp. 216,

221 (E.D. La. 1996) (holding that communication of suspected copyright infringement was

protected by qualified privilege where it served legitimate and shared business purpose).

Here, Tolbert and Duffy made statements about Phillips that were defamatory per se

because they accused Phillips of criminal conduct. Although falsity and malice are therefore

presumed, Defendants have successfully rebutted the presumption by proving that they made the

statements in good faith and only to proper parties. Tolbert and Duffy both executed declarations

in which they describe L Brands's tracking system, the findings of their investigation of Phillips,

and why they reasonably thought he was attempting to steal the cartons. These factors include:

(1) the shrinkage at the BBW and VS stores in the Mall of Louisiana that suggested potential misconduct of the delivery driver, and items posted for sale online in what appeared to be delivery packaging; (2) the location of six cartons on Phillips's truck at the end of the day that had all been scanned as delivered earlier in the day; (3) the scan history showing suspicious time delays around the scanning of the six cartons; (4) no record of any duplicate cartons or other discrepancies that would corroborate Phillips's explanation for the presence of the cartons on his truck; (5) Hambleton's inability to provide an alternative explanation; and (6) the appearance that someone tampered with the cartons.  This evidence supported Defendants' good faith suspicion of theft by Phillips.  Tolbert and Duffy both declared that they reported Phillips only to interested parties – namely, others within L Brands, Dicom's managers Hambleton and Pippen, and officers of the LPPD and EBRBP.[72]  Neither Tolbert nor Duffy discussed Phillips with anyone else, and they were not involved with Phillips or the investigation after June 27, 2017.[73]

Phillips offers no evidence to overcome the good faith privilege.  There is no evidence that Tobert or Duffy continued to discuss Phillips with anyone after June 27, 2017.  Phillips does not present evidence of knowing falsity or reckless disregard on the part of Defendants.  Moreover, the perceived inadequacies in Defendants' investigation do not undermine their good faith in reporting the information they had to the police.  *See Kennedy,* 935 So. 2d at 689 (observing that the "failure to investigate does not present a jury question on whether a statement was published with reckless disregard for the truth" when the suspicions of those making the report to the police are not arbitrary).  On this summary-judgment record, Defendants' suspicions were hardly arbitrary.  Therefore, Phillips cannot prevail on his defamation claim.

---

[72] R. Docs. 20-4 at 5; 20-5 at 3.  Given their business relationship, L Brands and Dicom share an interest in preventing theft of L Brands product.
[73] R. Docs. 20-4 at 5; 20-5 at 3.

### C. Malicious Prosecution

Under Louisiana law, there are six elements of a malicious prosecution claim:

(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) the legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

*Lemoine v. Wolfe*, 168 So. 3d 362, 367 (La. 2015) (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)). The Louisiana supreme court has defined "malice" as follows:

"Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to 'tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights."

*Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 761 (La. App. 1999) (quoting *Miller v. E. Baton Rouge Par. Sheriff's Dep't,* 511 So. 2d 446, 453 (La. 1987)). In that regard, "[m]alice exists when a charge is made with knowledge that it is false or with reckless disregard for the truth." *Id.* "The crucial determination in regard to the absence of probable cause is whether the defendants had an honest and reasonable belief in the allegations they made." *Id.* "Actions for malicious prosecution have never been favored, and hence, in order to sustain them, a clear case must be established." *Id.*

Phillips cannot make a clear case for malicious prosecution. First, he was never prosecuted because the district attorney decided not to pursue charges. Second, there was no malice. As discussed above, Defendants, at the very least, acted with probable cause that a crime had been committed, not with reckless disregard for the truth. They reported the findings of their investigation of Phillips to law enforcement with an honest, reasonable belief that Phillips was

attempting to steal the cartons.  There is no evidence that they were using the legal process for one of the improper purposes delineated by the Louisiana supreme court in its definition of malice. Contrary to Phillips's assertion, Defendants did not use any prosecution as an experiment to discover who committed a crime, but rather performed an investigation that gave rise to their reasonable belief that Phillips committed the crime they subsequently reported.  *See Kelly,* 745 So. 2d at 761-62 (affirming dismissal of malicious prosecution claim where employer reported suspected crime based on honest and reasonable belief).  Because Phillips cannot make a clear case for malicious prosecution, the claim must be dismissed.

### D.  False Arrest

False arrest occurs "when one arrests and restrains another against his will without a warrant or other statutory authority."  *Id.* at 761.  "The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention."  *Kennedy*, 935 So. 2d at 690.  A detention is unlawful if made without color of legal authority, such as an arrest made pursuant to a warrant that is null and void on its face.  *Touchton v. Kroger Co.*, 512 So. 2d 520, 524 (La. App. 1987).  On the other hand, "an arrest pursuant to a facially lawful arrest warrant cannot support a claim for false arrest."  *Morgan v. Richard*, 305 So. 3d 932, 935 (La. App. 2020).  The plaintiff has the burden of proving that an arrest was made without color of legal authority.  *Touchton*, 512 So. 2d at 524.

Phillips does not have a claim for false arrest.  He was arrested pursuant to a warrant, signed by a judge, that appears to be valid on its face.  Phillips has offered no evidence that the warrant was facially null and void.  Moreover, Phillips has not established how, under Louisiana law, private citizens, such as Defendants, could be liable for an arrest made by law enforcement authorities.

14

### E.  Negligent Infliction of Emotional Distress

Louisiana Civil Code article 2315 permits a claim for negligent infliction of emotional distress unaccompanied by physical injury.  *Holmes v. Lea*, 250 So. 3d 1004, 1014 (La. App. 2018).  Liability for tort damages for mental anguish based on article 2315 requires the application of the duty-risk analysis, where a plaintiff must prove each of the following elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant failed to conform to that standard; (3) the defendant's substandard conduct was a cause-in-fact of plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of plaintiff's injury; and (5) actual damages.  *Id.*  No liability can attach if any of these elements is lacking.  *Id.* "Moreover, recovery for negligent infliction of emotional distress unaccompanied by physical injury has been limited to cases involving the 'especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.'"  *Id.* (quoting *Moresi v. State, Dep't of Wildlife & Fisheries,* 567 So. 2d 1081, 1096 (La. 1990)).  In other words, the defendant's conduct must be outrageous or such that he knew or should have known that his conduct would cause genuine and severe mental distress as judged in light of the effect such conduct would have on a person of ordinary sensibilities."  *Id.*

As discussed above, Defendants acted reasonably in reporting the findings of their investigation of Phillips to law enforcement, Dicom, and within L Brands.  Thus, their conduct cannot be said to rise to the level of outrageous as would be necessary for a claim of negligent infliction of emotional distress to lie.  Thus, this claim must be dismissed.

### F.  Intentional Infliction of Emotional Distress

To prove intentional infliction of emotional distress in Louisiana, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress

suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Extreme and outrageous conduct is that which exceeds "all possible bounds of decency" and is "regarded as atrocious and utterly intolerable in a civilized community." *Id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Additionally, "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.* at 1210.

Again, as discussed above, Defendants acted reasonably in reporting the findings of their investigation of Phillips to law enforcement, Dicom, and within L Brands. Their conduct was not extreme and outrageous. Nor is there any evidence that Defendants' conduct was intended or calculated to cause severe emotional distress or that it did. Thus, Phillips's claim for intentional infliction of emotional distress must also be dismissed.

## IV.   CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 20) is GRANTED, and Phillips's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 18th day of April, 2022.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE